IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DON RISHELL, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | Case No. 3:16–CV-00511-NJR |
| | ) | |
| ALVION PROPERTIES, INC., | ) | Bankruptcy Case No. 15-40462 |
| | ) | |
| Appellee. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Appellant Don Rishell appeals the May 5, 2016 Order of the Bankruptcy Court striking and disallowing an informal proof of claim asserted by both Rishell and Pegula Rishell, LLC, in the bankruptcy case of Debtor/Appellee Alvion Properties, Inc. ("Alvion"). For the reasons set forth below, the decision of the Bankruptcy Court is affirmed.

## BACKGROUND

On May 14, 2015, Alvion filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Illinois, Case No. 15-40462.[1] Alvion, a mining company with 1,294 acres of land and 4,513 acres of minerals in Scott County, Virginia,[2] is owned by Shirley Karnes Medley and Harold M.

---

[1] All references to the docket in the Bankruptcy Court, Case No. 15-40462, are cited as (BK Doc. __).

[2] In Alvion's Statement of Financial Affairs (BK Doc. 1, p. 26), it describes the nature of its business as "mining or contract for coal and building stone." Apparently, however, no business was being conducted on the property at the time of the bankruptcy filing, nor is there currently any active business operation on the property (BK Doc. 52).

"Jack" Reynolds (BK Doc. 1). Robert E. Eggmann[3] subsequently was appointed and retained as disbursing agent for Alvion in the Bankruptcy Case, pursuant to 11 U.S.C. § 327(a) (BK Doc. 117).

On May 15, 2015, a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines was issued, notifying potential creditors of the date of the Meeting of Creditors and setting forth a September 15, 2015 deadline for filing a Proof of Claim (BK Doc. 8). On or about June 17, 2015, the Meeting of Creditors was held pursuant to 11 U.S.C. § 341 (BK Doc. 25), which Rishell attended (Doc. 29, p. 1). Rishell is the managing member of Pegula Rishell, LLC; George Pegula is the other member of the company (*see* BK Doc. 130, p. 5).

On November 20, 2015, Alvion filed a Motion for Order Authorizing Sale of Real Property, seeking approval for the sale and transfer of a majority of its real estate and mineral interests in Virginia (BK Doc. 87). On December 14, 2015, Rishell, acting *pro se*, sent a letter to the Bankruptcy Court, which the Court deemed an objection to Alvion's motion (BK Doc. 114). On December 15, 2015, the Bankruptcy Court considered and overruled all objections to Alvion's motion to sell, including Rishell's objection (BK Doc. 115). The Bankruptcy Court then entered an Order authorizing the sale of Alvion's real property on December 15, 2015 (BK Doc. 116).

Prior to the hearing on Alvion's motion to sell, counsel for Alvion spoke with Rishell in order to ascertain the nature of Rishell's objection (BK Doc. 130). Based on that conversation, Alvion's counsel came to understand that Rishell was actually seeking

---

[3] Eggmann joins in the Appellee's Brief. Collectively, Alvion and Eggmann are referred to as "Appellees."

money that he claimed was owed to him by Alvion. Counsel "strongly urged Rishell to file a proof of claim immediately" (*Id.*).

Rishell never filed a formal proof of claim, but, in an effort to cover all its bases, on January 13, 2016, Alvion filed a formal objection to any possible claim of Rishell or Pegula Rishell, LLC (*Id.*). Alvion's objection noted that, while it was unclear what Rishell believed he was entitled to, it appeared he was seeking expenses and/or a brokerage fee for a contemplated sale or loan that never closed (*Id.*). Attached to the objection was a commitment letter from Grand Rivers Community Bank addressed to Pegula Rishell, LLC, outlining conditions of a loan that it was prepared to consummate. The $8,900,000 loan to Pegula Rishell, LLC, was to have a term of 364 days at a fixed rate of 4.00%. Among other terms, the loan required a one-time fee of $5,000 from the borrower, as well as the signatures of both George Pegula and Donald Rishell on the Promissory Note and Assignment of Deposit (*Id.*). The commitment letter stated that the purpose of the loan was "to assist in the clearing of title on acreage located in Scott County, Virginia being purchased by Pegula Rishell, LLC." (*Id.*). Alvion's objection to Rishell's informal proof of claim argued that, pursuant to a conversation with a Grand Rivers Community Bank representative, the conditions of the loan were never met and the loan was never consummated. Therefore, Rishell or Pegula Rishell, LLC, never incurred any brokerage fees or any expenses and, thus, were owed nothing.

On February 29, 2016, Rishell filed an "Answer to Objection to Informal Claim of Don Rishell/Pegula Rishell, LLC and New Matter." (BK Doc. 163). With this filing, Rishell attempted to explain his claim to the Bankruptcy Court. According to Rishell, he

served as an advisor to a man named Bernd Weber, who was Alvion's chief financial officer (*Id.*; *see also* BK Doc. 52). For reasons that are unknown, the Alvion property came under the control of Weber from 2007 to 2012 by way of stock ownership (BK Doc. 52, p. 3). At some point, Rishell suspected "fraud, dirty dealings and unclean hands . . . on all sides of the transaction . . . ."[4] (BK Doc. 163). Rishell then claims he contacted Alvion and met with its principals in late 2011. At this meeting, Rishell allegedly "offered to come over to their side," and in return Alvion agreed to pay Rishell $300 per hour for consulting work, to be paid when they closed any deal "regarding the monetization of the Alvion property and/or mineral rights." According to Rishell, Alvion would not sign a contract memorializing the agreement because they did not want a court to know they were "paying for information" (a lawsuit had been initiated against Weber). In April 2013, control of the property was returned to Alvion pursuant to a court order that, Rishell claims, was the result of "items [Rishell] helped them recover and discover." Rishell further asserts that from the time of the 2011 meeting to the present, he had worked diligently to vet deals proposed to Alvion, all at his own expense. Rishell also claimed to have negotiated settlements with creditors on Alvion's behalf.

Attached to his Answer to Objection were three exhibits that, Rishell claims, purportedly demonstrate the "meeting of the minds" that occurred between Rishell and Alvion's principals regarding the $8,900,000 sale of Alvion assets to Pegula Rishell, LLC. Exhibit A was a July 14, 2015 e-mail signed by Pegula Rishell, LLC, and Donald Rishell addressed to Shirley Medley, Don Medley, and H. M. Jack Reynolds, wherein Rishell

---

[4] It is unclear to what transaction Rishell was referring, but presumably it is in relation to the stock ownership that allowed Weber to take control of Alvion.

summarizes the deal that was purportedly negotiated. The e-mail refers to a commitment letter from Shirley Medley as President of Alvion; however, the letter is not attached and appears nowhere in any of Rishell's filings. It also refers to various handwritten payment schedules and the commitment letter from Grand Rivers Community Bank (Doc. 163, pp. 5-6).

Exhibit B was an unsigned, undated letter addressed to a Mr. Covert, apparently from Rishell, expressing shock at the sale and financing of Alvion Properties, Inc. for $23,000,000 when, "pursuant to negotiated agreements, Pegula Rishell, LLC, has secured a loan commitment of $8,900,000, for the purchase of the assets of Alvion Properties, Inc." The letter also states that Rishell relied on a December 15, 2014 email from Shirley Medley (which is not in evidence) in proceeding to negotiate settlements with Alvion creditors, and that Pegula Rishell, LLC, "relied on the representations and agreements of Mr. Medley and Mr. Reynolds to get all parties to this point, and have damages if this deal is not completed. Based on the circumstances associated with this transaction, there has been a 'meeting of the minds' regarding this real estate transaction."

Exhibit C was a handwritten document dated December 15, 2014 to Rishell from Don Medley providing a list of accounts payable and the amounts owed, which apparently would be distributed from the $8,900,000 loan (BK Doc. 163, p. 10). The list includes payments to various people, including two payments of $1,000,000 and one payment of $300,000 to Don Rishell. The first $1,000,000 payment has a notation next to it that appears to state "pur gems." The notation next to the second $1,000,000 payment appears to say "Wells Fargo [illegible]." The third entry, for $300,000, has a notation next

to it that looks like "expenses." Rishell claims this exhibit makes it "plain to see that Medley owes the fees and expenses presented to the Bank as charges in his own handwriting."

At a hearing on February 29, 2016, the Bankruptcy Court ordered Rishell and Pegula Rishell, LLC, to retain counsel by March 28, 2016, and to file a formal proof of claim by April 11, 2016 (BK Doc. 164). Rishell was warned that failure to do so may result in the informal claims being stricken and disallowed. A written order to that effect was entered on March 2, 2016 (BK Doc. 166).

Rishell and Pegula Rishell, LLC, failed to comply with the Bankruptcy Court's oral and written orders. On April 19, 2016, Alvion filed a motion to strike and disallow the informal claim of Don Rishell/Pegula Rishell, LLC, due to their failure to abide by the court's orders (BK Doc. 189).

The Bankruptcy Court held a hearing on April 25, 2016 (BK Docs. 193, 237). Rishell appeared by telephone and presented his case in support of his informal claim. Specifically, Rishell asserted that serious health issues had prevented him from participating more actively in the bankruptcy proceedings and that he had attempted to secure an attorney but had been unsuccessful (BK Doc. 237, pp. 10-12). When generally describing his claim to the Bankruptcy Court, Rishell asserted that he had been involved in "this transaction" with Alvion since January 11, 2011, no one (presumably, other creditors) would have been paid had he not worked diligently for Alvion, and that he is due, at a minimum, the fees discussed for his continued "evaluation of this case and bringing it to a close." He claimed he had a bank commitment in place and there were

"contracts that were signed . . . and there were contracts that were not signed" that evidenced a meeting of the minds and an agreement that was "implied in fact." (*Id.*, p. 11). Rishell also stated that, while involved in "this project," he went to numerous meetings and attended depositions, all on his own dime, and that the Alvion principals agreed to pay him at the end of the transactions that were in place (*Id.*, pp. 11-12).

The Bankruptcy Court sympathized with Rishell's heath condition, but found it did not excuse him from hiring an attorney or filing a formal proof of claim as ordered by the Court. The Bankruptcy Court then found that Rishell's claim, if he had one, must be based either upon a contract or upon the theory of quantum meriut, *i.e.*, that some work Rishell did benefitted Alvion and he was therefore entitled to payment. The Court noted, however, that no contract had ever been filed and, while Rishell claimed to have performed certain work, the evidence before the Court did not demonstrate any benefit that accrued to Alvion. Accordingly, the Bankruptcy Court held that Rishell failed to state a valid claim in the bankruptcy. Alvion's objection to Rishell's informal claim was sustained, and its motion to strike and disallow the informal claim was granted (Doc. 193). A written order to that effect was entered on May 5, 2016 (Doc. 200).

On May 9, 2016, Rishell and Pegula Rishell, LLC, appealed the Bankruptcy Court's order to this District Court (Doc. 1). Alvion and its Disbursing Agent, Robert Eggmann ("Eggmann") each filed a motion to dismiss (Docs. 2 and 6), arguing that Pegula Rishell, LLC, filed a notice of appeal without representation by an attorney despite previous admonitions by the Bankruptcy Court. Furthermore, Rishell and

Pegula Rishell, LLC, failed to file the designation of the record on appeal and statement of issues as required by Bankruptcy Rule 8009(a).

On June 28, 2016, the Court ordered Rishell and Pegula Rishell, LLC, to show cause why the Court should not dismiss this action with prejudice pursuant to Federal Rule of Bankruptcy Procedure 8003(a)(2) and/or Federal Rule of Civil Procedure 41(b) for failure to prosecute and/or for failure to comply with a court rule (Doc. 7). Subsequent to the Court's Order to Show Cause, and after the Court granted an extension of time, Rishell and Pegula Rishell, LLC, timely filed a designation of the items to be included in the record on appeal and a statement of issues to be presented (Doc. 18). But Rishell and Pegula Rishell, LLC, still did not obtain counsel. On October 5, 2016, Pegula Rishell, LLC was dismissed with prejudice, and the Court ordered that the appeal proceed only as to Don Rishell individually (Doc. 19).

After several extensions of time (*see* Doc. 23, 26, 30), a supplemental notice of the statement of the issues and designation of the record on appeal (Doc. 28), a motion to strike said supplemental designation of the record on appeal (Doc. 31)—which was heard and decided by the Bankruptcy Court (Doc. 34)—and the denial of another motion for extension of time (Doc. 42), the appeal is ripe for review.

### SUBJECT MATTER JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158, as the Bankruptcy Court's order denying Rishell's informal proof of claim is a final appealable order. *In re Melillo*, 392 B.R. 1, 4 (B.A.P. 1st Cir. 2008)

("A bankruptcy court order sustaining an objection to a proof of claim is a final, appealable order.").

District courts apply a dual standard of review in bankruptcy appeals. The bankruptcy judge's findings of fact are reviewed for clear error, while conclusions of law are reviewed *de novo*. *In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2003); *In re Smith*, 286 F.3d 461, 464-65 (7th Cir. 2002). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## ANALYSIS

Before reviewing the merits of Rishell's appeal, the Court must address the issue of standing. Appellees contend that the informal claim in Alvion's bankruptcy case belongs to Pegula Rishell, LLC, and not Don Rishell. Because Pegula Rishell, LLC, was dismissed from the appeal, Appellees argue, Rishell now lacks standing to appeal the order of the Bankruptcy Court.

The Seventh Circuit has held that bankruptcy standing is narrower than Article III standing. *In re Ray*, 597 F.3d 871, 874 (7th Cir. 2010) (citing *In re Stinnett,* 465 F.3d 309, 315 (7th Cir. 2006)); *see also In re Cult Awareness Network, Inc.,* 151 F.3d 605, 607-08 (7th Cir. 1998)); *In re Carbide Cutoff, Inc.,* 703 F.2d 259, 264 (7th Cir. 1983). "Only a 'person aggrieved' has standing to appeal an order of the bankruptcy court." *In re Schultz Mfg. & Fabricating Co.,* 956 F.2d 686, 690 (7th Cir. 1992) (citing *In re UNR Indus., Inc.,* 725 F.2d

1111, 1120 (7th Cir. 1984)). In other words, only "those persons affected pecuniarily by a bankruptcy order have standing to appeal that order." *In re Stinnett*, 465 F.3d at 315. "[A] person has standing to object to an order if that person can 'demonstrate that the order diminishes the person's property, increases the person's burdens, or impairs the person's rights.'" *In re Ray*, 597 F.3d at 874 (quoting *In re Cult Awareness Network*, 151 F.3d at 608). The purpose of narrowly defining who has standing in a bankruptcy proceeding is to ensure the "swift and efficient administration of the bankrupt's estate." *Id.* (quoting *In re Cult Awareness Network*, 151 F.3d at 608.

Here, Appellees argue that the record before the Bankruptcy Court is replete with evidence supporting the fact that, to the extent a claim existed against the bankruptcy estate, it was owned entirely by Pegula Rishell, LLC. Within the informal proof of claim (BK Doc. 114), Rishell characterized the alleged transaction as a proposed sale of certain assets owned by Alvion to Pegula Rishell, LLC, in consideration of a commitment letter addressed to Pegula Rishell, LLC, from Grand Rivers Community Bank. The claim further stated that Pegula Rishell, LLC, stood ready to proceed with the purchase as stated. In support of the claim, Rishell attached correspondence from Grand Rivers Community Bank discussing the proposed commitment to Pegula Rishell, LLC, for the purchase of certain property, stating that "Grand Rivers Community Bank is pleased to commit a loan in the amount of $8,900,000 to Pegula Rishell, LLC, a Pennsylvania LLC." The letter further stated that the purpose of the aforementioned loan was to assist in the clearing of title on acreage located in Scott County, Virginia, for purchase by Pegula Rishell, LLC. Appellees argue this evidence demonstrates that only Pegula Rishell, LLC,

possessed a financial stake in the outcome Bankruptcy Court's order because it alone stood to profit from the transaction with Alvion. Thus, because the Bankruptcy Court's order denying the informal proof claim did not diminish Rishell's property, increase his burdens, or impair his rights, he has no standing to contest it.

In reply, Rishell argues that he told the Bankruptcy Judge that this appeal was put forth on behalf of Don Rishell and not Pegula Rishell, LLC, and that the commitment letter from Grand Rivers Community Bank was negotiated on behalf of Rishell with the understanding that the commitment would be assigned to any entity of Rishell's choice. Furthermore, Rishell states, he is the Managing General Partner of Pegula Rishell, LLC, and he is authorized to make decisions for the LLC. As such, he has a financial interest in the outcome of this appeal and therefore has standing.

After careful review, the Court agrees with Appellees that Rishell lacks standing to appeal the Bankruptcy Court's adverse ruling on the informal proof of claim with regard to any purported claim asserted by Pegula Rishell, LLC. The evidence before the Court, namely the commitment letter from Grand Rivers Community Bank, indicates that it was Pegula Rishell, LLC, that stood to gain from the claimed agreement with Alvion. While Rishell asserts he is the Managing General Partner of Pegula Rishell, LLC, that does not give him standing to appeal on behalf of the company. *See In re Schultz Mfg. & Fabricating Co.*, 956 F.2d at 690 (only a "person aggrieved" has standing to appeal an order of the bankruptcy court); *In re Heyl*, 770 F.3d 729, 730 (8th Cir. 2014) (member or manager of LLC lacks standing to appeal the bankruptcy court's adverse ruling with regard to claim belonging to LLC).

That does not end the analysis, however, as Rishell also asserted to the Bankruptcy Court that he was owed fees for consulting work and negotiating settlements with creditors, in addition to time and travel for depositions. It is unclear from the record whether this work was performed on behalf of Pegula Rishell, LLC, or by Rishell individually. If the work was performed by Rishell individually, he would be affected pecuniarily and, thus, have standing to appeal the Bankruptcy Court's denial of his claim.

At the hearing on the informal proof of claim, the Bankruptcy Court found that the only way Rishell could have a claim is if he could prove a breach of contract occurred, or if he was entitled to recovery on the theory of quantum meruit. Since there was no valid contract in evidence, however, and because the Bankruptcy Court was unsure from the record that any benefit accrued to Alvion based on Rishell's work, the informal claim was denied.

Reviewing the Bankruptcy Court's conclusions of law *de novo*, the Court cannot say the Bankruptcy Court erred in finding that Rishell has no claim in the bankruptcy case. Under the Bankruptcy Code, a creditor may file with the bankruptcy court a proof of its claim against a debtor. 11 U.S.C. § 501(a). A claim, proof of which is filed pursuant to Section 501 of the Bankruptcy Code, is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). Under 11 U.S.C. § 502(b)(1), if an objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that such claim is unenforceable against the debtor and property of the debtor.

The validity of a creditor's claim is to be determined by reference to state law. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 451 (2007).

Here, the Bankruptcy Court found that Rishell failed to state a claim either on a contractual basis or on the basis of quantum meruit. Rishell has asserted in his papers that, while there was no signed contract between the parties, they had a contract implied in fact to compensate Rishell for his services. A contract implied in fact arises "from a promissory expression that may be inferred from the facts and circumstances that demonstrate the parties' intent to be bound." *Trapani Const. Co. v. Elliot Grp., Inc.*, 64 N.E.3d 132, 142 (Ill. App. Ct. 2016). Under Illinois law, "in order to prove an implied contract the party asserting the contract must show the same elements as an express contract, as well as a meeting of the minds and a mutual intent to contract." *New v. Verizon Commc'ns, Inc.*, 635 F. Supp. 2d 773, 782–83 (N.D. Ill. 2008). "Generally, for a contract to be valid, an acceptance must be objectively manifested; if it is not, there is no meeting of the minds." *Trapani*, 64 N.E.3d at 143.

Here, there is no evidence in the record indicating Alvion's intent to be bound. Rishell has presented documentary evidence in the form of letters and e-mails that he authored (and some that are neither signed nor dated), but nothing objectively demonstrating Alvion's intent to contract, particularly with regard to Alvion's intent to pay Rishell for his consulting services. He has provided no evidence, other than his own word, demonstrating that he was hired to do any consulting work, to negotiate settlements, to give depositions, or to secure financing for the sale of Alvion assets. He simply has not provided any proof that a meeting of the minds occurred.

Rishell also failed to provide evidence that he has a claim based on quantum meruit, or a contract implied in law/quasi-contract. "The theory of recovery in quantum meruit is that the defendant has received a benefit which would be unjust for him to retain without paying for it." *Barry Mogul & Assocs., Inc. v. Terrestris Dev. Co.*, 643 N.E.2d 245, 251 (Ill. App. Ct. 1994). "Quasi-contractual relief is available when one party has benefited from the services of another under circumstances in which, according to the dictates of equity and good conscience, he ought not retain such benefit." *Id.*

Again, Rishell failed to provide evidence in the bankruptcy case that Alvion benefitted in any way from his purported consulting work. In fact, the only evidence in the record that even comes close to demonstrating a business relationship existed between Alvion and Rishell is the handwritten schedule of payments that was included as Exhibit C to Rishell's informal proof of claim. While that document, written by Don Medley, includes an entry that appears to indicate Rishell would receive $300,000 out of the $8,900,000 loan for "expenses," it is unclear whether that money was designated for Rishell individually or for Pegula Rishell, LLC. It is also unclear what is meant by "expenses." Was Medley referring to the consulting work allegedly performed by Rishell? Or was he referring to expenses to be incurred with the closing of the loan? It is not the Court's role to speculate as to Medley's intent in drafting this document. Without more, this "draft" schedule of payments prepared in anticipation of a loan that was never consummated does not constitute sufficient evidence of a quasi-contract.

Based on the lack of evidence in the record supporting any claim, the Court affirms the order of the Bankruptcy Court disallowing Rishell's informal proof of claim.

As a final note, however, the Court recognizes that Rishell and/or Pegula Rishell, LLC, might have been allowed a claim, had they followed Court orders. Rishell and his LLC clearly are familiar with Alvion's real estate transactions, and they went so far as to secure a commitment letter for a $8.9 million loan to purchase Alvion's assets. Perhaps that is why the Court is befuddled that they never secured counsel to guide them through the bankruptcy proceedings. A party sophisticated enough to obtain a loan of that nature surely should appreciate the value of hiring an attorney to represent their interests. If Rishell had done so, perhaps he could have proved the validity of his claim while also preserving the claim of the LLC. Unfortunately for Rishell, he failed to do either.

For these reasons, the decision of the Bankruptcy Court is **AFFIRMED**.

**IT IS SO ORDERED.**

**DATED:   March 17, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**